1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9    ERIC PINEDA,                                    1:10-cv-00354-OWW-DLB (HC)

10                           Petitioner,              FINDINGS AND RECOMMENDATION
                                                      REGARDING PETITION FOR WRIT OF
11           v.                                       HABEAS CORPUS

12                                                    [Doc. 1]
     K. HARRINGTON, Warden
13
                           Respondent.
14   _____/

15

16          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17   pursuant to 28 U.S.C. § 2254.

18                           PROCEDURAL BACKGROUND[1]

19          Following a jury trial, Petitioner was convicted of carjacking (Cal. Pen. Code[2] § 215(a),

20   count 1), robbery (§ 211, count 2), assault with a firearm (§ 245(a)(2), count 3), and unlawful

21   taking of a vehicle (Cal. Veh. Code § 10851(a), count 4).  With respect to counts 1, 2, and 4, the

22   jury found true allegations that Petitioner personally used a firearm, in the commission of the

23   crimes (§§ 12022.53(b), 12022.5(a)).  As to all counts, the jury found true the allegation that

24   Petitioner committed the crimes for the benefit of, at the direction of, or in association with a

25   criminal street gang. (§ 186.22(b)(1)).  In a bifurcated proceeding, the trial court found Petitioner

26

27          [1] This information is derived from the state court documents lodged by Respondent on May 26, 2010, and is not subject to dispute.

28          [2] All further statutory references are to the California Penal Code unless otherwise indicated.

had one prior "strike" conviction (§§ 667(b)-(I), 1170.12(a)-(d)).  Petitioner was sentenced to 30 years imprisonment.

The California Court of Appeal affirmed the judgment, and the California Supreme Court denied review.  The United States Supreme Court also denied certiorari.

While his petition for review was pending in the California Supreme Court, Petitioner filed a petition for writ of habeas corpus in the California Superior Court.  The superior court denied the petition.  Petitioner then filed a habeas corpus petition in the California Court of Appeal.  The appellate court summarily denied the habeas petition.  Petitioner also filed a habeas petition in the California Supreme Court, which was summarily denied.

Petitioner filed the instant federal petition for writ of habeas corpus on March 1, 2010.  Respondent filed an answer to the petition on May 26, 2010.  On June 14, 2010, Petitioner filed a motion for discovery.  On July 29, 2010, Petitioner filed a traverse.

<u>STATEMENT OF FACTS</u>

On September 26, 2006, Stephen Bistrow drove to work in Visalia.  He arrived around 5:00 a.m., parked his 1997 Lincoln Town Car in front of the gate to his business, and got out of the car to open the gate.  The sun was just beginning to come up and it was still a little dark.  There was some light from neighboring businesses and street lights.  As Bistrow was opening the gate, an early-model Cadillac pulled up behind his car and three men jumped out.  Two of the men were carrying guns.

Bistrow was approached by one of the men, who he later identified as [Petitioner]. [Petitioner] was carrying an automatic pistol and wearing a hooded sweatshirt. [Petitioner] had the hood up on his head but nothing was obstructing his face. [Petitioner] stood approximately three feet from Bistrow and pointed the gun at the center of Bistrow's forehead. [Petitioner] was holding the gun in his left hand.  The other man with a gun stood next to Bistrow's open car door.  This man also pointed his gun at Bistrow, shouted profanities, and demanded the keys to Bistrow's car.

Bistrow gave [Petitioner] his car keys. [Petitioner] used his right hand to grab Bistrow's cell phone out of his pocket. [Petitioner] then got into the passenger's side of Bistrow's car, and the other man with a gun got into the driver's side.  The third man got back into the Cadillac and sped away.  Bistrow's car followed.  Bistrow estimated the entire incident lasted two to three minutes.

Bistrow testified on cross-examination that when he first saw [Petitioner's] gun, he though he was "going to die" and was "extremely scared." As to other thoughts going through his mind, Bistrow testified, "I just wanted to make sure I got a good look at the guy who was putting the gun in my face in case he didn't kill me so I can identify him."  Bistrow confirmed he was able to get a good look at both the gun and the individual pointing it at him.

2

On September 30, 2006, around 1:30 a.m., a police officer on patrol in Tulare observed Bistrow's car. Noticing the car had no rear license plate, the officer attempted to make a traffic stop. A chase ensued. It began as a low-speed chase but increased in speed as other officers joined the pursuit. The car eventually crashed. The five occupants, including [Petitioner], fled on foot but were shortly apprehended by the police.

A couple weeks after his car was taken, police contacted Bistrow. He went to an impound lot in Visalia to identify his car. Bistrow observed the car was altered. His handicap license plate was missing, a number of items were stripped from the interior of the car, and there were stains on the carpet. Bistrow also identified [Petitioner] in a photographic lineup as the assailant that took his car keys and cell phone at gunpoint.

During a police interview following his arrest, [Petitioner] waived his Miranda rights and claimed he did not know how he came to be in Bistrow's car on the night of September 30, 2006. [Petitioner] agreed with the detective interviewing him that he had a "memory lapse."

**Gang Evidence**

Visalia Police Officer Luma Fahoum testified as an expert witness regarding the Loco Park criminal street gang in Visalia. Office Fahoum was personally familiar with [Petitioner], whose street name was "Silly," and identified him as a member of the Loco Park gang. She was also personally familiar with the other four men that fled from Bistrow's vehicle on September 30, 2006, and identified them as Loco Park gang members.

Officer Fahoum opined that the crimes under the circumstances here would be committed to benefit a criminal street gang. She explained that the use of guns "makes them a more feared gang" and is "a good way of providing fear and intimidation." It also benefits the gang "to have a vehicle to commit further crimes that's not registered to them" and "not be identified by law enforcement should someone get the license plate or vehicle description."

Officer Fahoum further testified that "the vicious act of putting a gun to somebody's head and ordering property benefits the individual gang member who commits the crime whether they say they're a gang member or not at the time of the crime." She explained: "Information is passed along. Other gang members know they have put in this work. It's read in the newspapers, and oftentimes they have to answer to it in court like we are today. They have to go to jail custody for it where they can boast and brag about their actions, their work they put in. It benefits the individual's status. It helps promote their status in the gang. [¶] Like we said in the beginning, they start at a low level and advance and escalate in this gang. This is one good way to do that."

**The Defense**

[Petitioner's] girlfriend and her mother testified that at 5:30 a.m. on September 26, 2006, [Petitioner] was at home asleep in bed.

Dr. Robert Shomer testified as an expert in the area of eyewitness identification, perception, and memory in stressful situations. Dr. Shomer testified that identification of strangers was unreliable, and that hats or objects that obscure "the head or hairline or head shape [have] a massive [adverse] effect on

1   accuracy."  Dr. Shomer further testified that a person in a stressful situation was
2   less likely to make an accurate identification and research consistently showed
    that accuracy rates were "far lower when a weapon [was] present."

3                                    DISCUSSION

4   A.    Jurisdiction

5           Relief by way of a petition for writ of habeas corpus extends to a person in custody

6   pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

7   or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

8   529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered

9   violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises

10  out of the Tulare County Superior Court, which is located within the jurisdiction of this Court.

11  28 U.S.C. § 2254(a); 2241(d).

12          On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

13  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

14  enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114

15  F.3d 1484, 1499 (9th Cir. 1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting

16  Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct.

17  1114 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059

18  (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

19  petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

20  B.    Standard of Review

21          Where a petitioner files his federal habeas petition after the effective date of the Anti-

22  Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that

23  the state court's adjudication of his claim:

24          (1) resulted in a decision that was contrary to, or involved an unreasonable
            application of, clearly established Federal law, as determined by the Supreme
25          Court of the United States; or

26          (2) resulted in a decision that was based on an unreasonable determination of the
            facts in light of the evidence presented in the State court proceeding.

27

28  ///

                                          4

1  28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if it "applies a rule that

2  contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are

3  materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown

4  v. Payton, 544 U.S. 133,  141 (2005) citing Williams (Terry) v. Taylor, 529 U.S. 362, 405-06

5  (2000).  A state court decision will involve an "unreasonable application of" federal law only if it

6  is "objectively unreasonable." Id., quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti,

7  537 U.S. 19, 24-25 (2002) (per curiam).  "A federal habeas court may not issue the writ simply

8  because that court concludes in its independent judgment that the relevant state-court decision

9  applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations

10 omitted).  "Rather, that application must be objectively unreasonable." Id. (citations omitted).

11         "Factual determinations by state courts are presumed correct absent clear and convincing

12 evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court

13 and based on a factual determination will not be overturned on factual grounds unless objectively

14 unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."

15 Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Both subsections (d)(2) and (e)(1) of § 2254

16 apply to findings of historical or pure fact, not mixed questions of fact and law.  See Lambert v.

17 Blodgett, 393 F.3d 943, 976-77 (2004).

18         Courts further review the last reasoned state court opinion.  See Ylst v. Nunnemaker, 501

19 U.S. 979, 803 (1991).  However, where the state court decided an issue on the merits but

20 provided no reasoned decision, courts conduct "an independent review of the record . . . to

21 determine whether the state court [was objectively unreasonable] in its application of controlling

22 federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  "[A]lthough we

23 independently review the record, we still defer to the state court's ultimate decisions." Pirtle v.

24 Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

25 C.    Impermissibly Suggestive Identification Procedure

26         Petitioner contends that the identification procedure was impermissibly suggestive.

27 Petitioner raised this claim in his state habeas petitions, which were summarily denied.

28 ///

1                    1.      Factual Background

2          Police officer Cory Sumpter informed Bistrow that his vehicle had been recovered and

3     five individuals in his vehicle were apprehended.  Sumpter set up a meeting with Bistrow, to

4     show him a photographic line up to determine if he could identify anyone involved in the

5     carjacking.  Five photographic lineups were prepared (30 photos total), each containing a photo

6     of one of the five individuals apprehended.  Sumpter read an admonition and showed the lineups

7     to Bistrow and asked if he recognized anyone.  Bistrow identified Petitioner as the gunman.

8          At the preliminary hearing and the trial, Bistrow identified Petitioner in court as the

9     gunman.  Bistrow acknowledged that at the time of the carjacking he was "extremely scared";

10    however, he looked Petitioner "right in the eye" because he wanted to make sure he could

11    identify him if he was not killed.

12                   2.      Analysis

13         "[C]onvictions based on eyewitness identification at trial following a pretrial

14    identification by photograph will be set aside . . . only if the photographic identification

15    procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of

16    irreparable misidentification."  Simmons v. United States, 390 U.S. 377, 384 (1968).  The court

17    reviews the totality of the circumstances surrounding the challenged procedure for improper

18    suggestiveness.  United States v. Bagley, 772 F.2d 482, 492 (9th Cir. 1985).  If the court

19    concludes that the procedure was not impermissibly suggestive, the inquiry ends.  Id.  However,

20    if the court concludes otherwise, it must determine whether the identification was nevertheless

21    reliable under the totality of the circumstances.  Id.

22          In order to determine whether the admission of identification evidence violates a

23    defendant's right to due process of law, the court considers (1) whether the identification

24    procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself

25    was nevertheless reliable under the totality of the circumstances, taking into account such factors

26    as the opportunity of the witness to view the suspect at the time of the offense, the witness's

27    degree of attention at the time of the offense, the accuracy of his or her prior description of the

28    suspect, the level of certainty demonstrated at the time of the identification, and the lapse of time

between the offense and the identification.  <u>Manson v. Brathwaite</u>, 432 U.S. 98, 104-107, 114

(1977); <u>Neil v. Biggers</u>, 409 U.S. 188, 199-200 (1972).

> The defendant bears the burden of demonstrating the existence of an
> unreliable identification procedure. [Citations.] "The question is whether anything
> caused defendant to 'stand out' from the others in a way that would suggest the
> witness should select him." [Citation.] ¶ Moreover, there must be a "substantial
> likelihood of irreparable misidentification" under the "' "totality of the
> circumstances""'" to warrant reversal of a conviction on this ground.

<u>Manson v. Brathwaite</u>, 432 U.S. at 104-107; <u>see also</u> <u>Johnson v. Sublett</u>, 63 F.3d 926, 929 (9th

Cir. 1995).

State findings concerning the factors outlined by the Supreme Court in <u>Neil v. Biggers</u>

are considered factual and must therefore be granted a presumption of correctness.  28 U.S.C. §

2254(e)(1); <u>see</u> <u>Jarrett v. Headley</u>, 802 F.2d 34, 42 (2d Cir. 1986); <u>Sumner v. Mata</u>, 445 U.S.

591, 592 (1981).  However, the ultimate question of constitutionality of pretrial identification

procedures is a mixed question of fact and law, and hence is not governed by the presumption.

<u>Sumner</u>, 449 U.S. at 597.  "[T]he federal court may give different weight to the facts as found by

the state court and may reach a different conclusion in light of the legal standard.  But the

questions of fact that underlie this ultimate conclusion are governed by the statutory presumption.

. . ."  <u>Id</u>.  (emphasis in original).

Under the AEDPA, a determination of whether a court has unreasonably applied a legal

standard depends in large measure on the specificity of the standard at issue.  Indeed, "[a]pplying

a general standard to a specific case can demand a substantial element of judgment," <u>Yarborough</u>

<u>v. Alvarado</u>, 541 U.S. 652, 664 (2004), whereas a standard defined with exacting specificity can

be applied almost mechanically.  Therefore, "[t]he more general the rule, the more leeway courts

have in reaching outcomes in case-by-case determinations."  <u>Id</u>.

In this instance, the photographic lineup submitted to this Court does not rise to the level

of a constitutional violation.  <u>See</u> Lodged Doc. Q.  A review of the photographic lineup and the

identification procedure described by Bistrow and agent Sumpter, reveals why counsel

reasonably did not challenge the admissibility of the identification.[3]  First, prior to any

identification by Bistrow, the admonition at the top of the photographic lineup, of which he

undisputably read, specifically stated:

> You will be asked to look at a group of photographs.  The fact that the photographs are shown to you should not influence your judgment.  You should not conclude or guess that the photographs contain the picture of the person who committed the crime.  You are not under any obligation to identify anyone.  It is just as important to free innocent persons from suspicion as to identify guilty parties.  Do not be influenced by the fact that the persons in the photograph may have beards, mustaches, or long hair.  Do not be influenced by the fact that some of the pictures may be in color while others are black and white.  Please do not discuss the case with other witnesses nor indicate in any way that you have or have not identified someone.

(Lodged Doc. Q.)

Second, the photographs presented in the group of Petitioner's photograph were not "grossly

dissimilar in appearance" from Petitioner's.  See United States v. Wade, 388 U.S. 218, 233

(1967).  Although Agent Sumpter may have informed Bistrow that his vehicle was recovered and

five individuals were apprehended, it was not unnecessarily suggestive as Petitioner made the

identification based on his own observations during the offense, and there is no evidence to the

contrary.  Third, Bistrow was unequivocal in his identification of Petitioner as the gunman and

recognized him immediately when shown the photo lineup.  However, Bistrow was very careful

not to make a misidentification as another individual looked familiar to one of the other suspects,

but he did not make a positive identification because he was not 100 percent sure.  Although

Bistrow was scared during the carjacking, he was able to get a close up view of Petitioner's face

and focused upon it to make a later identification.  Under these circumstances, there was nothing

about the photographic lineup procedure that would have "emphasize[d] the focus upon"

Petitioner's photograph.  United States v. Bagley, 772 F.2d at 493.  Because the Court finds that

the identification procedure was not impermissibly suggestive that is the end of the due process

analysis.  Id. at 492-493.  Consequently, the state courts' determination of this issue was not

---

[3] Petitioner's counsel did challenge the accuracy of Bistrow's identification and effectively raised the issue of misidentification through cross-examination. (See RT 74-98, 100-102, 154-162, 164-165.); See also Simmons v. United States, 390 U.S. 377, 384 (1969) (acknowledging that risk underlying the identification procedure may be exposed "by a course of cross-examination" through confrontation.)

1   contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor

2   an unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254(d).

3   D.   Violation of Double Jeopardy Clause

4        Petitioner contends that the carjacking prosecution violated the double jeopardy clause.

5   Petitioner presented this claim in his state habeas corpus petitions, which were summarily

6   denied.

7        1.   Background

8        The carjacking offense occurred on September 26, 2006, and the police recovered

9   Bistrow's car and apprehended Petitioner on September 30, 2006.  On October 3, 2006, the

10  District Attorney filed a misdemeanor complaint against Petitioner, charging him with resisting

11  arrest (§ 148(a)).  On October 4, 2006, after viewing five photo lineups, Bistrow identified

12  Petitioner as the gunman during the carjacking.  On October 10, 2006, Petitioner pled no contest

13  to the misdemeanor resisting arrest charge.  Petitioner's sentence of 60-days jail time was

14  suspended and he was granted probation.  On November 14, 2006, Petitioner was arrested and

15  was charged with the carjacking on November 16, 2006.

16       Before trial, Petitioner moved to dismiss the carjacking prosecution under section 654, as

17  interpreted by Kellett v. Superior Court, 63 Cal.2d 822 (1966).  The District Attorney opposed

18  the motion.  The trial court denied the motion.

19       2.   Applicable Law and Analysis

20       As Respondent correctly points out, this Court does not have the authority to review a

21  challenge to § 654, under state law.[4]  California law places an administrative duty on prosecutors

22  to join offenses in a single prosecution when "the prosecution is or should be aware of more than

23  one offense in which the same act or course of conduct plays a significant part."  Kellett v.

24

25       [4] Section 654(a) provides:
26            An act or omission that is punishable in different ways by different provisions of law shall
        be punished under the provision that provides for the longest potential term of imprisonment, but
27       in no case shall the act or omission be punished under more than one provision.  An acquittal or
        conviction and sentence under any one bars a prosecution for the same act or omission under any
28       other.

1   Superior Court, 63 Cal.2d at 827.  The Kellett rule is derived from section 654 and does not

2   involve double jeopardy principles.  The United States Supreme Court has "steadfastly refused to

3   adopt the 'single transaction' view of the Double Jeopardy Clause."  Garrett v. United States, 471

4   U.S. 773, 790 (1985).

5       However, the Double Jeopardy clause precludes multiple punishments for the same

6   offense.  See Witte v. United States, 515 U.S. 389 (1995); United States v. DiFrancesco, 449

7   U.S. 117, 129 (1980).  The determination of whether punishments are "multiple" is a question

8   resolved by turning to the legislative intent.  See Missouri v. Hunter, 459 U.S. 359, 366-368

9   (1983).  "The applicable rule is that where the same act or transaction constitutes a violation of

10  two distinct statutory provisions, the test to be applied to determine whether there are two

11  offenses or only one, is whether each provision requires proof of a fact which the other does not."

12  Blockburger v. United States, 284 U.S. 299, 304 (1932).

13      In this case, Petitioner's claim is based on the belief that the resisting arrest and

14  carjacking arose from a single act or course of conduct.  To the contrary, these offenses took

15  place at different times and in different places, and were clearly different events.  As such,

16  Petitioner was not placed in double jeopardy, and his claim is without merit.

17  E.    Ineffective Assistance of Counsel Claims

18      Petitioner raises two separate but related claims of ineffective assistance of counsel.

19  First, counsel was ineffective for failing to exclude any reference to Petitioner's prior conviction

20  before trial and, second, he was ineffective for failing to move for mistrial after Officer Fahoum

21  testified about his prior strike conviction.  He further claims his plea on the prior strike offense

22  was entered in reliance on his then counsel's erroneous advice that section 12031 with a criminal

23  street gang enhancement would not constitute a strike.

24      1.    Improper Reference to Prior Strike Conviction

25      The California Court of Appeal rejected Petitioner's claim that counsel was ineffective

26  for failing to move to exclude evidence of his prior strike conviction in the last reasoned state

27  court decision, stating, in pertinent part, the following:

28          On redirect examination, Officer Fahoum testified about [Petitioner's]

10

prior strike conviction in response to a question about when factors she considered in [Petitioner's] history in concluding he was a validated gang member under the criteria used by her office. [fn. 3] Defense counsel objected and moved to strike Officer Fahoum's answer, invoking Evidence Code section 352. The trial court granted counsel's motion and ordered the answer stricken, admonishing the jury to disregard the answer and to proceed as though it had never heard it. The subject was never touched on again during [Petitioner's] jury trial.

N. 3. Specifically, Officer Fahoum testified: "Without going and dragging his whole laundry list out, I can think of one incident I was involved with [Petitioner] that meets the criteria by itself, a good number of them. That was an incident where I was undercover watching an area where there is heavy gang graffiti down by La Joya School. I observed [Petitioner] and another kid that's a member of Loco Park, Stephen [L.], drive by. Both subjects were on active probation. [¶] A car stop was made by my partners, and two guns were found in the car. He was later convicted of that crime and ordered by the Court to register as a gang member, but he was involved in a gang-related crime, he was with a gang member, he had gang tattoos, a blue bandana, and he admitted to being a Sureno when he was booked in jail that day.

[Petitioner] now contends he received ineffective assistance of counsel because his counsel failed to move for a mistrial after Officer Fahoum testified about his prior conviction. [Petitioner] also suggests his counsel was deficient for failing to move in limine to exclude evidence of his prior conviction, and for failing to challenge the prosecutor's "open-ended" question which elicited the stricken answer. We conclude that [Petitioner] cannot establish prejudice and thus his ineffective assistance claim fails. [footnote omitted.]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Here, after Officer Fahoum testified regarding the circumstances of [Petitioner's] prior conviction, defense counsel objected. The trial court sustained counsel's objection, ordered the answer stricken, and expressly admonished the jury to disregard it. Further, at both the beginning and conclusion of trial, the court instructed the jury, "If I ordered testimony stricken from the record, you must disregard that and not consider that testimony for any purpose." As indicated above, Officer Fahoum's stricken answer was the only reference to [Petitioner's] prior conviction during this jury trial. We disagree that the circumstance that [Petitioner's] prior conviction involved [Petitioner's] presence in a car with another gang member and two guns was so inflammatory that the jury would be unable to follow the court's instructions. Because of the gang allegations, the prosecution was entitled to and did present evidence of [Petitioner's] gang affiliation. In this context, Officer Fahoum's testimony, though cumulative and potentially prejudicial, would not have the shock value that [Petitioner] now attributes to it. We thus presume the trial court's admonitions were sufficient to cure any potential prejudice from Officer Fahoum's volunteered statements about [Petitioner's] prior conviction.

We also take into consideration that the evidence [Petitioner] complains of is somewhat removed from what [Petitioner] has deemed to be the main issue in this case; i.e., whether Bistrow accurately identified [Petitioner] as the assailant that assaulted him with a gun during the September 26, 2006, carjacking. The evidence of guilt was very strong. Bistrow indicated that, despite his fear during the carjacking, he intentionally focused on [Petitioner's] face and gun so that he might be able to identify [Petitioner] later if he survived the incident. Bistrow's

eyewitness testimony was corroborated by other circumstantial evidence linking [Petitioner] to the carjacking, including [Petitioner's] presence in Bistrow's car with other gang members four days later, and his rather incredible claim that he had a memory lapse and did not know how he came to be in Bistrow's car.

As noted above, the determination whether an error in the admission of evidence is incurably prejudicial is, by nature, speculative. Hence, "'it [is] a rare case in which the merits of a mistrial motion [are] so clear that counsel's failure to make the motion . . . amount[s] to ineffective assistance.'" (*People v. Jennings* (1991) 53 Cal.3d 334, 380, quoting *People v. Haskett* (1982) 30 Cal.3d 841, 854.) This is not one of those rare cases. Following this reasoning, any failure of counsel to request a mistrial at this juncture of the trial did not prejudice [Petitioner], and counsel cannot be deemed ineffective. (*Strickland v. Washington*, *supra*, 466 U.S. at p. 687.) Moreover, because it is not reasonably probable [Petitioner] would have received a more favorable result absent the evidence of his prior conviction, we reject [Petitioner's] claims that his counsel was ineffective for failing to make an in limine motion to exclude the evidence or for failing to challenge the prosecutor's question that elicited the evidence.

(Lodged Doc. A.)

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. The court must

also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).  More precisely, petitioner must show that (1) his attorney's performance was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail.  Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

In this instance, the trial court properly admonished the jury immediately following the improper reference to Petitioner's prior conviction, and the jurors are presumed to abide by such instructions from the court.  Weeks v. Angelone, 528 U.S. 225, 234 (2000).  The reference to the prior conviction was never repeated or otherwise emphasized thereafter.  Next, the focal point of the trial was the accuracy of Bistrow's identification.  The prior conviction was considered by Officer Fahoum as one factor in determining whether he was a validated gang member, and the evidence was not so irrelevant to inflame the jury's emotions.  Furthermore, the evidence of Petitioner's guilt was overwhelming.  Petitioner's defense was based on misidentification.  However, Bistrow unequivocally identified Petitioner from a photo lineup and at trial as the individual who pointed the gun at his head and stole his vehicle.  In addition, Petitioner was discovered in Bistrow's vehicle just four days after the carjacking, along with four other known gang members.  Therefore, given this evidence, the state court's determination was not an unreasonable application of the Strickland standard.

2.  Plea to Prior Strike Offense

Petitioner contends that his plea on the prior strike offense was entered in reliance on his then-counsel's erroneous advice that section 12031 with a criminal street gang enhancement

1   would not constitute a strike.

2               a.   Background

3        In Tulare County Superior Court case number VCF149470, Petitioner entered a no

4   contest plea to carrying a loaded firearm not registered (§ 12031(a)) with a criminal street gang

5   enhancement (§ 186.22(b)).   Petitioner was specifically advised that the offense constituted a

6   "strike."   At sentencing, a different public defender argued the offense was not a "strike."   The

7   argument was rejected and Petitioner was sentenced to probation.

8        Prior to sentencing on the new offenses, Petitioner challenged the validity of his prior

9   plea conviction claiming his counsel and the trial court failed to advise him that the offense

10  constituted a "strike."   After reviewing the transcript of the prior plea, counsel withdrew the

11  challenge acknowledging Petitioner was properly advised by the trial court.

12              b.   Analysis

13       In Lackawanna County District Attorney v. Coss, 532 U.S. 394 (2001), the Court held

14  that "once a state conviction is no longer open to direct or collateral attack in its own right

15  because the defendant failed to pursue those remedies while they were available (or because the

16  defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. . . . If

17  that conviction is later used to enhance a criminal sentence, the defendant generally may not

18  challenge the enhanced sentence through a petition under § 2254 on the ground that the prior

19  conviction was unconstitutionally obtained."   Id. at 403-404.   The only exception to this rule is a

20  challenge to a prior conviction that was obtained without the benefit of counsel in violation of the

21  Sixth Amendment.   Id. at 404.   Petitioner's claim does not fall under the narrow exception to this

22  rule and is not subject to review.

23       In any event, there is no basis for habeas corpus relief.   Under California law, Petitioner's

24  prior conviction for carrying a loaded firearm not registered (§ 12031(a)(1) & (a)(2)(F)) with a

25  criminal street gang enhancement (§ 186.22(b)(1)) is a "strike."   § 1192.7(c)(28); see People v.

26  Briceno, 34 Cal.4th 451 (2004).   Even if counsel did not advise Petitioner he was pleading to a

27  "strike" offense, the transcript reveals the trial court properly advised Petitioner the offense

28  constituted a "strike."   See Lodged Doc. R at 2 ["[T]his as [sic] strike, which means if you plead

14

guilty or no contest to this and later commit any felony offense, this would be - they'd say you have a strike if that's found to be true, you wouldn't be eligible for probation and your sentence would be doubled."].)  Therefore, there is no basis for Petitioner to claim that he relied on counsel's erroneous advise in rendering his plea of no contest.

F.     Insufficient Evidence to Support Criminal Street Gang Enhancement

Petitioner contends that there was insufficient evidence to support the criminal street gang enhancement.

1.     Last Reasoned Decision of State Court

The California Court of Appeal found the claim to be without merit:

> [Petitioner] contends insufficient evidence supports the gang enhancements.  Specifically, [Petitioner] challenges the sufficiency of the evidence to show that the offenses and his specific intent were gang related.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> To establish the gang enhancement, the prosecution had to prove that the crime was (1) "for the benefit of, at the direction of, or in association with" a criminal street gang, and (2) that the defendant had "the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) [fn.5] These elements essentially require that both the crime and the defendant's specific intent be "gang related." (*People v. Gardeley* (1996) 14 Cal.4th 605, 619, 621-622, 625, fn. 12.)  A defendant's mere membership in the gang does not suffice to establish the gang enhancement.  (Id. at pp. 623-625); *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1199 (Frank S.).)  Rather, "'[t]he crime itself must have some connection with the activities of a gang . . . .'" (*Frank S.*, *supra*, at p. 1199.)
>
> [fn. 5] the prosecution must also prove "that the gang (1) is an ongoing association of three or more persons with a common name or common identifying sign or symbol; (2) has as one of its primary activities the commission of one or more of the criminal acts enumerated in the statute; and (3) includes members who either individually or collectively have engaged in a 'pattern of criminal activity' by committing, attempting to commit, or soliciting two or more of the enumerated offenses (the so-called 'predicate offenses') during the statutorily defined period." (*People v. Gardeley* (1996) 14 Cal.4th 605, 617, italics omitted.)  [Petitioner] does not challenge the evidence concerning these elements, and thus implicitly concedes the sufficiency of the evidence supporting them.
>
> As indicative above, [Petitioner] claims there was insufficient evidence to show the current offenses and his specific intent were gang related.  He places strong reliance on the facts that there was no evidence that the other two individuals involved in the carjacking were also gang members, [Petitioner] did not advertise any gang involvement (such as yelling gang slogans or flashing gang signs) during the incident, and the victim was neither a gang member nor did he suspect the crimes committed against him were gang related.   In [Petitioner's] view, Officer Fahoum's conclusions about the gang-related nature of the crimes were nothing but sheer speculation and conjecture.

We disagree with appellant's assessment of Officer Fahoum's testimony. It is entirely proper for a qualified expert as Officer Fahoum is here, when presented with hypothetical scenarios "properly rooted in the evidence presented at trial" *(People v. Ferraez* (2003) 112 Cal.App.4th 925, 930 *(Ferraez* ); see also *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1551, fn. 4), to testify how particular criminal conduct may enhance a gang's reputation or how a gang may use proceeds from a crime to further other criminal activity. (Accord, *People v. Gonzalez* (2006) 38 Cal.4th 932, 946, fn. 3; *People v. Ward* (2005) 36 Cal.4th 186, 209.) Such matters are " 'sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' " (*People v. Ferraez, supra,* 112 Cal.App.4th at p. 931; e.g., *People v. Gonzalez, supra,* 38 Cal.4th at pp. 945-946.)

The court in *Ferraez, supra,* addressed an argument similar to that made by appellant here, that the evidence in that case showed his intent was not gang related but instead "entirely personal: to quickly get $400 with which to buy himself a car." (112 Cal.App.4th at p. 930.) In rejecting that contention, the appellate court found testimony from a gang expert based upon hypothetical scenarios, combined with evidence that the defendant planned to sell the drugs in another gang's territory and earlier admissions that he was a member of different gang on friendly terms with the other gang, was sufficient for the jury to reasonably infer the crime was gang related. (*Id.* at p. 931.)

Here, there was additional evidence, besides the expert's testimony, linking appellant's crimes to gang activity. Four days after he committed the crimes in Visalia, appellant was observed enjoying the spoils of his crimes with other Loco Park gang members. First, they were observed driving the car late at night in Tulare. They then led police officers on a dangerous, high-speed chase. The jury could reasonably infer from these circumstances that the crimes appellant committed four days earlier were intended to, and did benefit, his gang. Officer Fahoum explained how the taking of a car would benefit the gang by providing the gang a means of committing further crimes while lowering the risk of identification. The aforementioned use of Bistrow's car by appellant and his fellow gang members after the carjacking was consistent with the expert's description of gang activity. Officer Fahoum also explained how the use of a gun to carry out the offenses would benefit the gang by increasing the gang's reputation as a "feared gang" and by enhancing the status of the individual gang member. Officer Fahoum explained that, even if a gang member did not identify himself as such during the commission of a crime, his status could still be enhanced by the news of his conduct getting passed along by other gang members. The presence of other gang members in the stolen car with appellant several days after he used a gun in a highly intimidating and threatening manner to take the car from Bistrow greatly increased the odds that appellant's conduct during the offenses was communicated to other gang members and that his reputation and the reputation of his gang were thereby enhanced.

Based on these circumstances and the expert's testimony, the jury could reasonably conclude the crimes appellant committed on September 26, 2006, were for the benefit of the gang and that appellant had the specific intent to promote, further, or assist, any criminal conduct by the gang. This case thus is clearly distinguishable from situations in which the defendant's criminal history and gang affiliation constituted the only evidence a crime was gang related (see *People v. Martinez* (2004) 116 Cal.App.4th 753, 761-762), or the only crime consisted of passive conduct by a lone individual and the expert's testimony did not merely

give

meaning to the defendant's actions, but instead amounted to personal belief as to the defendant's subjective intent (see *Frank S., supra,* 141 Cal.App.4th at pp. 1196-1199).

Finally, we reject appellant's argument that the specific intent requirement of section 186.22, subdivision (b)(1) is governed by the holding in *Garcia v. Carey* (9th Cir.2005) 395 F.3d 1099, which interpreted that section to require a finding that the gang conduct promoted by the gang member must be separate from the facts of the underlying conviction. This interpretation is at odds with the plain language of the statute and with the analysis by other California courts that have considered it. We reject it as well.[FN6] "By its plain language, the statute requires a showing of specific intent to promote, further, or assist in '*any* criminal conduct by gang members,' rather than *other* criminal conduct. (§ 186.22, subd. (b)(1)....)" (*People v. Romero* (2006) 140 Cal.App.4th 15, 19; see also *People v. Hill* (2006)142 Cal.App.4th 770, 774.)

FN6. Federal court interpretation of state law is not binding. (*People v. Burnett* (2003) 110 Cal.App.4th 868, 882; *Oxborrow v. Eikenberry* (9th Cir.1989) 877 F.2d 1395, 1399.)

2.   <u>Applicable Law and Analysis</u>

The law on insufficiency of the evidence claim is clearly established.  The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). Sufficiency claims are judged by the elements defined by state law.  <u>Id</u>. at 324, n. 16.

With regard to the sufficiency of the evidence to support a gang enhancement under section 186.22, the Ninth Circuit has recently held:

California law requires the prosecutor to prove two things.  First, the prosecutor must demonstrate that the defendant committed a felony "for the benefit of, at the direction of, or in association with [a] criminal street gang."  Cal. Penal Code § 186.22(b)(1).  Second, the prosecutor must show that the defendant committed the crime "with the specific intent to promote, further, or assist in any criminal conduct by gang members."  Id.  We have previously recognized the importance of keeping these two requirements separate, and have emphasized that the second step is not satisfied by evidence of mere membership in a criminal street gang alone.

<u>Briceno v. Scribner</u>, 555 F.3d 1069, 1078 (9th Cir. 2009) (citing <u>Garcia v. Carey</u>, 395 F.3d 1099, 1102-1103 & n.9 (9th Cir. 2005).  In <u>Briceno</u>, the gang expert testified in terms of "generalities"

that the crimes could glorify the gang, but did not provide direct or circumstantial evidence regarding the defendant's specific intent.  Briceno, 555 F.3d at 1078.  In such circumstances, the Ninth Circuit held the expert testimony did not establish the petitioner's specific intent in committing the crimes.  Id. at 1078-1079.  This particularly so in Briceno because the defendant submitted proof of a different motivation, i.e. personal gain.

Subsequent to Garcia v. Carey, the California courts have held that section 186.22's specific intent element does not require the intent to enable or assist criminal activities by gang members aside from the offense charged.  The intent to commit the gang related offense suffices.  See, e.g., People v. Hill, 142 Cal.App.4th 770, 774 (2006); People v. Romero, 140 Cal.App.4th 15, 19-20 (2006); People v. Vasquez, 178 Cal.App.4th 347, 353-354 (2009).  Because of the conflict, the Ninth Circuit recently asked the California Supreme Court to decide the question of state law.  Emery v. Clark, 604 F.3d 1102 (9th Cir. 2010)

In this case, resolution of the state law question is not necessary because the outcome would not differ under either interpretation of section 186.22's specific intent requirement.  Here, unlike in Briceno and Garcia, the gang expert offered circumstantial evidence in support of Petitioner's specific intent to commit the crimes for the benefit, at the direction of, or in association with the criminal street gang.  Officer Fahoum provided expert testimony regarding Petitioner's membership in the Loco Park street gang.  Fahoum was personally familiar with Petitioner through past gang contacts.  The Loco Park gang is a subset of the southern criminal street gangs and is comprised of predominately young Hispanic males.  They associate with the color blue and the number 13-which represents M the 13th number of the alphabet.  Petitioner has several tattoos, including Loco Park on his stomach, LPG on his knuckles for Loco Park gang, and three dots which represents the number 13, the letter M, and his gang moniker is "Silly."  Fahoum opined that carrying and displaying a gun promotes the gang by instilling fear and intimidation, and the carjacking would benefit the gang by obtaining a vehicle to get around under disguise to commit further crime and violence.  When Bistrow's vehicle was recovered, all five individuals, including Petitioner, were known Loco Park gang members.  Consistent with officer Fahoum's testimony, the presence of other gang members in the stolen vehicle obtained

1  by Petitioner at gunpoint would greatly increase his reputation among the gang.

2   Furthermore, this case is distinguishable from <u>Briceno</u>, because there was no evidence of

3  an alternate motivation for the offense.  Indeed, Petitioner's defense was premised on

4  misidentification.  In addition, Officer Fahoum's testimony was not based on hypothetical

5  questions and speculation, but rather on her own personal investigations, interactions, and

6  knowledge of Petitioner and the Loco Park gang.  Accordingly, viewing the totality of the

7  evidence in the light most favorable to the prosecution, the state court's denial of this claim was

8  not an unreasonable application of <u>Jackson</u>, and the claim must be denied.

9  RECOMMENDATION

10   Based on the foregoing, it is HEREBY RECOMMENDED that:

11   1. The instant petition for writ of habeas corpus be DENIED; and

12   2. The Clerk of Court be directed to enter judgment in favor of Respondent.

13   This Findings and Recommendation is submitted to the assigned United States District

14  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the

15  Local Rules of Practice for the United States District Court, Eastern District of California.

16  Within thirty (30) days after being served with a copy, any party may file written objections with

17  the court and serve a copy on all parties.  Such a document should be captioned "Objections to

18  Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served

19  and filed within fourteen (14) days after service of the objections.  The Court will then review the

20  Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that

21  failure to file objections within the specified time may waive the right to appeal the District

22  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

24   IT IS SO ORDERED.

25   **Dated:** <u>**August 6, 2010**</u>   <u>**/s/ Dennis L. Beck**</u>
         UNITED STATES MAGISTRATE JUDGE